**Leonard F. Sydenstricker, a Minor, by His Mother and Next Friend, Ann Sydenstricker, Plaintiff-Appellant, v. Chicago & Northwestern Railway Company, a Corporation, Defendant-Appellee.**

Gen. No. 52,156.

First District, Fourth Division.

March 26, 1969.

Louis P. Miller, Unger & Unger, of Chicago, for appellant.

Richard M. Freeman, James P. Daley, and James H. Alesia, of Chicago, for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Leonard F. Sydenstricker, a minor, brought suit by his mother and next friend to recover for injuries incurred when he fell from the ladder of a tank car standing in defendant's railroad yard while playing a

game of tag with his friends. Summary judgment was entered in favor of defendant and plaintiff has appealed.

Plaintiff charged in his amended complaint substantially as follows:

> Defendant permitted a railroad tank car to remain and stand on defendant's premises unguarded and with no limitation to accessibility from the immediately adjacent residential area;

> The premises were unfenced in open view of and no more than 100 feet from the residence of plaintiff and the tank car was so located as to be attractive to children of tender years;

> For at least a week prior to the date of the occurrence, children of tender years were in the habit of resorting to the premises and playing upon the tank car and climbing an iron ladder that was attached to and part of the tank car;

> Children had been attracted and invited thereto by childish curiosity and instinct, and defendant knew of the aforesaid facts, or should have known of them by the exercise of ordinary care and nevertheless defendant negligently suffered the same to be and remain;

> At the time of the occurrence plaintiff was a minor at the age of nine years old and at the time and prior thereto he was in the exercise of due care and caution for his own safety commensurate with his age, capacity and discretion;

> On June 15, 1959, plaintiff in the company of other children, attracted and invited by reason of the premises and negligence of the defendant, engaged in playing on the tank car and while playing plaintiff gained access to the top of the ladder and fell to the ground.

Defendant responded by moving for summary judgment and stated substantially as follows:

> Plaintiff alleges in his amended complaint that he fell from a standing tank car that was stopped on a siding in the yard of defendant. Plaintiff in his deposition admitted that there was no defect in the tank car;

> Plaintiff further admitted in his deposition that he slipped from the ladder of the tank car when he attempted to tag another boy that was playing on the tank car;

> Plaintiff admitted he was a trespasser and that his mother had on many occasions forbidden him to go into the yard where the accident occurred. The complaint did not allege that plaintiff was in any respect mentally or physically incapable of appreciating or avoiding the danger that existed when he trespassed upon the property and equipment of defendant;

> That Ill Rev Stats ch 114, § 72 (1961), was in full force and effect at the time of the occurrence. The statute in substance provides: No one shall go upon any locomotive or car, whether moving or stationary, or any railroad track unless in compliance with the law or permission of the railroad. Plaintiff was in violation of the statute;

> Defendant denied that the tank car standing on a siding was an attractive nuisance and averred that there was no genuine issue as to any material fact and defendant was entitled to a judgment as a matter of law.

Plaintiff responded and answered to the motion for summary judgment substantially as follows:

> Denied that he admitted there was no defect in the tank car, or that he slipped from the tank while

429

playing tag with another boy, or that he was a trespasser at the time of the occurrence, or that he was forbidden on many occasions to go into the aforesaid railroad yard.

Plaintiff further answered the motion for summary judgment by alleging he was in the exercise of due care and caution for his own safety commensurate with his age, capacity and discretion. Plaintiff denied he was in violation of the aforesaid statute and alleged that the statute has no application for a nine-year-old child and further stated that a violation of such a statute is only one of the facts to be considered in determining whether or not the plaintiff is guilty of contributory negligence; a presumption exists that a person nine years of age is incapable of contributory negligence.

Plaintiff denied that the tank car standing on the siding was not an attractive nuisance.

Plaintiff denied that there were no issues of fact and stated that the issues of fact are substantially as follows:

> Defendant was negligent in maintaining a railroad yard containing tank cars on tracks directly adjacent to residential areas where children were known to play, in not maintaining fences or warning signs around the yard, in keeping railroad cars in a place easily accessible to children, whether defendant knew of the attractive nature of such cars to children. Defendant should have foreseen the possibility of children being in an area that was unguarded and unfenced containing railroad cars and whether defendant exercised a sufficient degree of patrol activity over said yard to prevent possibility of children being injured.

Mrs. Ann Sydenstricker in her deposition which was filed by the defendant in support of its motion testified substantially as follows:

430

Before the accident she had told plaintiff not to play in the railroad yard, told him this every time she caught him there. That plaintiff and his friends always played in the railroad yard. On the day of the accident she was shopping and her husband was at work.

No one from the railroad ever advised her that her son, the plaintiff, was playing in the railroad yard. She never saw any railroad employee chase the boys out of the railroad yard nor had she heard of this happening. On occasions when plaintiff disobeyed her and persisted in playing in the railroad yard, she would punish plaintiff by confining him in the house.

She testified as to the relative ease by which anyone could walk off the street in front of the plaintiff's home and onto the railroad yard. There were no fences or obstructions to impede or deny access to the railroad yard. She testified that the railroad tank car involved here had been standing at the place of the accident for at least three or four days. In fact, she had chased plaintiff off of this tank car a few days prior to the accident.

The deposition of the plaintiff, Leonard F. Sydenstricker, was substantially as follows:

"My friends and I were playing 'it' and I climbed up the ladder of the tank car to tag one of my friends and I fell back and off the ladder, I must have slipped. I hit my leg on the car before hitting the ground, then I hit the ground which was paved with brick. I was knocked unconscious when I struck my head.

"The ladder was secure, I did not notice any oil or debris. The ladder was not wet nor were the steps rotted out. I was at the top rung of the ladder when I fell about nine and a half feet from the ground.

431

"Before the accident, I played in the railroad yard every day for a year if not 2 years. My mother told me not to play in the railroad yard, she told me this many times, as did my father. I was never chased out of the railroad yard by any railroad workers, nor did I ever see anyone else chased. Neither railroad nor Chicago police ever chased us from the yard.

"The tank car had been standing in the same place for at least eight or nine days. I played on other railroad cars in the yard, but after the accident, I never went into the railroad yard."

The trial court sustained defendant's motion for summary judgment. The court found that there was no dispute as to how the accident occurred; nor any dispute as to the facts and circumstances surrounding the accident; that plaintiff as a matter of law occupied the status of an invitee on the defendant's premises, but as a matter of law, plaintiff's injuries were not proximately caused by any negligence on the part of the defendant.

OPINION

Plaintiff relies primarily upon Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836 (1955), in support of his theory that the defendant railroad is liable for negligence in failing to fence the area, or otherwise inhibit access to the area and tank car; that it knew or should have foreseen that children might climb a ladder and fall incurring injuries. In the Kahn case, plaintiff incurred injuries when a pile of lumber upon which he was playing toppled over and lumber fell upon him. The Kahn case at page 622 said:

"The test in the case at bar is whether the lumber company in the exercise of ordinary care could reasonably have anticipated the likelihood that children

432

would climb onto the lumber and would be injured *if it were not securely piled."* (Emphasis supplied.)

There is no allegation here that the railroad tank car was a defective structure. Kahn and subsequent cases require that there be present a defective structure *or* dangerous agency. The dangerous agency can result from a common instrumentality which of itself is not defective if the instrumentality and its surroundings creates a dangerous condition which is likely to cause injury to children. Smith v. Springman Lumber Co., 41 Ill App 2d 403, 191 NE2d 256 (1963).

The facts in the instant litigation reflect that an essential element of liability is absent, since the injury was not the result of any defective structure or dangerous agency inherent in this parked railroad tank car. In fact, plaintiff fell from an appurtenance, a ladder, in good condition, designed and specifically provided for climbing.

■ The risk that children may climb and fall from a non-defective stationary object simply because children might be expected to climb upon it when the object is lawfully located for an appropriate and useful purpose is not an "unreasonable risk" so as to produce liability within the meaning of Kahn. Another requirement for liability under Kahn is that a child because of his age and immaturity be incapable of appreciating the risk involved. The risk in climbing is simple and obvious to a child of plaintiff's age and experience.

In Trobiani v. Racienda, 95 Ill App2d 228, 233, 238, 238 NE2d 177 (1968), the court said:

> "Since the Kahn case, to impose liability it must be shown: (1) the occupier knows that young children frequent the vicinity; (2) there is a *defective structure or dangerous agency* present on the land; (3) that structure or agency is likely to cause injury

because of the child's inability to appreciate the risk; and (4) the expense of remedying the situation is slight." (Emphasis supplied.)

Plaintiff cites the Trobiani case in support of his argument, but in Trobiani, the plaintiff child incurred his injuries when he fell from a ladder, in a building under construction, and into an open stairwell. The court held that a ladder over an open stairwell in a building under construction constituted a dangerous condition to a minor plaintiff.

In Smith v. Springman Lumber Co., supra, a child fell from an unused fuel oil tank which had been abandoned next to a tree. The owner knew that the children played upon this tank and would climb upon it and swing onto the adjoining tree where they would swing from the branches. The court held at page 407:

". . . the proper yardstick with which to measure this case against Kahn is whether or not the tank and tree *together* . . . created a 'dangerous agency' which was likely to cause injury to the children."

Plaintiff also relies upon Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 166 NE2d 98 (1960), a sandpile adjoined a railroad embankment on which there were six sets of railroad tracks and the children crossed the tracks to reach and play on the sandpile. Plaintiff left the sandpile and was injured when he slipped and fell under a moving train. This court in Landman v. M. Susan & Associates, Inc., 63 Ill App2d 292, 211 NE2d 407 (1965), said at page 296:

". . . in the Halloran case, there was a question of whether the sand pile was located in a 'dangerous environment.' "

 This court finds that the alleged dangerous agency maintained was that a minor would enter the area,

434

climb a ladder attached to a railroad tank car and in the process fall off. The possibility of the foregoing does not create so unreasonable a risk of injury as to impose a duty to preclude or inhibit access to this tank car, admittedly nondefective, that was susceptible of being climbed.

Climbing is an expected adventure in the life of young children. It is difficult if not impossible for one to guard against children falling as it is to preclude their climbing. A device, structure or other object utilized to prevent or impede young people from climbing another device, structure or object has the same inherent hazard, that of the young person falling while climbing.

If there had been a defect in the ladder, or the tank car, that caused the plaintiff to fall, the facts would obviously take on another legal posture.

In Stanley v. Missouri Pac. R. Co. (La), 179 So2d 490 (1965), a 6-year-old child fell while climbing the sideladder of a freight car parked immediately across from his home. The basis of the alleged liability of the railroad was its failure to fence or otherwise inhibit access of neighborhood children to the freight car, knowing they might attempt to climb the ladder and might perhaps fall while in the process. The court at page 492 held:

> "In view (a) of the social utility of the railroad's conduct, (b) the relative difficulty of safeguarding standing railroad vehicles from climbing children, and (c) the comparatively slight danger to children ordinarily occasioned thereby, a railroad is not liable when children are injured upon a freight or other train car simply because the company left it unattended and should reasonably have been aware of the presence of children in the vicinity who might climb upon it."

At page 493:

"The only hazard allegedly maintained was that a child might fall as he climbed upon the parked freight car. Under the uniform jurisprudence such a possibility by itself does not create so unreasonable a risk of injury as to impose a duty to inhibit children's access to the otherwise undangerous climbable object."

In Schilz v. Walter Kassuba, Inc., 27 Wis 390, 134 NW 2d 453 (1965), the defendant corporation had and maintained four large pipes extending 12 to 15 inches above ground level and they were unguarded, with children having free access to them. The plaintiff, age 10, while playing on the pipes, slipped off and incurred injuries. The defendant alleged that the complaint failed to state a cause of action and upon review the defendant's position was sustained. The court said, page 455:

"The real question appears to be whether 'four large black pipes extending approximately twelve (12) to fifteen (15) inches above ground level' in an accessible area can be deemed inherently dangerous to children even if alleged to be so."

The court continued:

"Indeed the challenge offered by the risk of falling is probably what provided the fun. There is no suggestion of any surprising danger, such as instability of the pipes or unusual slipperiness."

At page 457:

"It appears generally to be the rule that a child is bound to appreciate a simple and obvious danger of falling from an object or structure, but is not bound to appreciate a danger presented or exagger-

ated by a defect in the structure or other peculiar circumstance, which is hidden from the child or which a child would fail to appreciate because of his immaturity."

In Wilinski v. Belmont Builders, Inc., 14 Ill App2d 100, 143 NE2d 69 (1957), an 11-year-old boy playing "hide and go seek" fell from a ladder at the rear of a building under construction. The ladder was "homemade" and used by the workmen to enter and leave the structure, because the stairs had not been installed. The plaintiff in his complaint alleged that the ladder was defective and that the plaintiff sustained his injuries as a direct result of falling off said defective ladder, and at the trial adduced evidence of the defect. On appeal the judgment for the plaintiff was affirmed, and the court held that the ladder leaning against the building was sufficiently connected to it to be considered part of the building and therefore that the condition of the building as a whole was *dangerous and unsafe.*

In Ramsay v. Tuthill Bldg. Material Co., 295 Ill 395, 129 NE 127 (1920), the child came onto the property of the defendant and climbed a ladder and played in the sand in one of the storage bins. The child on the day of the accident climbed an attached ladder to a height of about 50 feet on the structure. The child looked down into one of the sand bins and observed that the slide at the bottom was open. He jumped down into the bin to see if he could go through the opening. As he slid down into the bin a quantity of sand covered him and caused his death by suffocation. The judgment in favor of the plaintiff was affirmed.

The court at page 400 said:

> While it may be said that neither the sand upon the ground, *the ladder,* the structure, nor the sand in the

437

bin, were themselves dangerous and the combination of all or any of them was not dangerous, this is only true so long as the sand was inert. But the bin full of sand, with the opening in the bottom, was itself dangerous to any person who would get into the bin. It was especially attractive to children because of the motion of the sand itself and the apparent ease of sliding down through the hole to the ground. The danger would not be apparent to a child, and the conditions constituted an attractive and dangerous combination for children. (Emphasis supplied.)

In Dickeson v. Baltimore & O. C. T. R. Co., 73 Ill App 2d 5, 220 NE2d 43 (1965), affd 42 Ill2d 103, 245 NE2d 762 (1969), plaintiff was injured while "flipping" railroad cars. The courts held that defendants had knowledge of the children's practice of coming on the defendants' property to "flip" rides on moving trains and thus had a duty to maintain the premises in a manner to protect children from injury. However, the Appellate Court said at page 18:

"A *moving railroad train* is certainly an instrumentality of great potential danger to children . . . ." (Emphasis supplied.)

at page 33:

". . . the railroad owed a duty of ordinary care to see that these children were not injured by their *moving train.*" (Emphasis supplied.)

In Chicago & A. R. Co. v. McLaughlin, 47 Ill 265 (1868), the court said at page 267:

"A railway car, standing by itself upon the track, is, ordinarily, a very harmless object, and, unless

there is something in or about it that renders it dangerous, we know no reason why the railway company should be required to establish a guard over it."

The judgment of the trial court is affirmed.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.